1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
UNITED STATES OF AMERICA      .    Criminal No. 1:19cr334-3
                              .
      vs.                     .    Alexandria, Virginia
                              .    April 14, 2021
JINGYUAN LI,                  .    11:11 a.m.
                              .
             Defendant.       .
                              .
. . . . . . . . . . .         .
```

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:            DAVID A. PETERS, AUSA
                               MARY K. DALY, SAUSA
                               United States Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, VA 22314

FOR DEFENDANT JINGYUAN LI:     ELON BERK, ESQ.
                               Gurovich, Berk & Associates
                               15250 Ventura Boulevard
                               Suite 1220
                               Los Angeles, CA 91403
                                 and
                               DOUGLAS A. RAMSEUR, ESQ.
                               The Ram Law Firm
                               530 E. Main Street, Suite 608
                               Richmond, VA 23219

CANTONESE INTERPRETER:         ROSE YOUNG

OFFICIAL COURT REPORTER:       ANNELIESE J. THOMSON, RDR, CRR
                               U.S. District Court, Third Floor
                               401 Courthouse Square
                               Alexandria, VA 22314
                               (703)299-8595

(Pages 1 - 29)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

```
 1                    P R O C E E D I N G S
 2                    (Defendant present.)
 3            THE CLERK:  Criminal Case 19-334-3, United States of
 4    America v. Jingyuan Li.  Will counsel please note their
 5    appearances for the record.
 6            MR. PETERS:  Good morning, Your Honor.  David Peters
 7    and Mary Daly once again for the United States.
 8            THE COURT:  Good morning.
 9            MR. BERK:  Good morning, Your Honor.  Elon Berk for
10    Mr. Li.
11            THE COURT:  All right.  And we have our interpreter.
12    She's still affirmed from her previous proceeding.
13        ROSE YOUNG, CANTONESE INTERPRETER, PREVIOUSLY AFFIRMED
14            THE COURT:  All right.  Mr. Li, come up to the
15    lectern.
16        JINGYUAN LI, DEFENDANT, AFFIRMED (through interpreter)
17            THE COURT:  All right, Mr. Li, take off your mask so
18    we can hear you clearly, please.
19            THE COURT:  All right, Mr. Li, this is your second
20    time in court.  I'm going to repeat what we did last time just
21    to make sure you fully understand what's going on.  Do you
22    understand that?
23            THE DEFENDANT:  (In English) Yes.
24            THE COURT:  All right.  For the record -- first of
25    all, you've taken a promise to tell the truth in answering all
```

3

1    of the Court's questions.  Do you understand that?

2              THE DEFENDANT:  (In English) Yes.

3              THE COURT:  And that means that if you should lie in

4    answering any question, the government could prosecute you for

5    a new and separate crime called perjury.

6              Do you understand that?

7              THE DEFENDANT:  (In English) Yes, I do.

8              THE COURT:  For the record, what is your full name?

9              THE DEFENDANT:  Jingyuan Li.

10             THE COURT:  Mr. Li, how old are you?

11             THE DEFENDANT:  Forty-nine years old.

12             THE COURT:  How many years of schooling have you

13   finished?

14             THE DEFENDANT:  Oh, seven years.

15             THE COURT:  Seven years?  In what country?

16             THE DEFENDANT:  China.

17             THE COURT:  Are you able to read, write, speak, or

18   understand any English?

19             THE DEFENDANT:  No.

20             THE COURT:  Are you at this time under the care of a

21   doctor for any physical or mental condition?

22             THE DEFENDANT:  No.

23             THE COURT:  Within the last 24 hours, have you taken

24   any kind of medicine?

25             THE DEFENDANT:  No.

4

1          THE COURT:  Are you at this time under the influence
2    of any alcohol or drugs, illegal drugs?
3          THE DEFENDANT:  No.
4          THE COURT:  Are you a United States citizen?
5          THE DEFENDANT:  No.
6          THE COURT:  Do you understand that if you are
7    convicted of a serious crime, you can become deportable from
8    the United States?
9          THE DEFENDANT:  Yes.
10         THE COURT:  All right.  And, counsel, did you discuss
11   with your client potential immigration consequences from a
12   conviction?
13         MR. BERK:  We did, Your Honor.
14         THE COURT:  All right.  We have in court this
15   morning -- and I want to make sure, is there -- are there any
16   changes to the plea agreement or the statement of facts from
17   the last time we were in court?
18         MR. PETERS:  Not to the plea agreement, Your Honor.
19   There was a newly executed statement of facts, so you will see
20   different dates on the plea agreement as well as the statement
21   of facts.
22         THE COURT:  What are the dates?
23         MR. PETERS:  The plea agreement will reflect the
24   March date that was originally signed.  There's a newly
25   executed statement of facts.

5

1          THE COURT:  All right, got it.  Got it.

2          So I have in court this morning two documents -- a

3   plea agreement and an addendum to the plea agreement -- and I'm

4   looking at the last page of each document, and I see what

5   appears to be your signature and the date of March 18, 2021.

6          Did you sign both documents, sign them in March?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  And we went over these

9   documents the last time you were in court, but I'm going to go

10  over them again with you.  First of all, before you signed

11  these documents, did you have enough time to discuss them

12  thoroughly with your lawyers?

13         THE DEFENDANT:  Yes, I have.

14         THE COURT:  Did you ask your lawyers all the

15  questions that you had about these two agreements?

16         THE DEFENDANT:  I already did, yes.

17         THE COURT:  And did they answer all of your questions

18  to your satisfaction?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And do you understand that if you have

21  any questions today while we're going over these agreements,

22  you can stop and either ask me or ask for time to talk with

23  your lawyers about the agreements?  Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And, counsel, for the record, can you

6

1   tell us how you went over the plea agreements with your client?

2          MR. BERK:  Your Honor, we reviewed every paragraph

3   with the use of an interpreter.  We -- my client had many

4   questions about it.  We had a back-and-forth discussion, and

5   some of that led to the changes in the statement of facts.

6          I think as far as the amount of time that it took, I

7   think it was about six hours with the use of an interpreter.

8          THE COURT:  And was that a one-time meeting, or did

9   you meet more than once with your client over the plea

10  agreements?

11         MR. BERK:  Your Honor, we went over the plea

12  agreement and the statement of facts back in March and again

13  two days ago.

14         THE COURT:  And, Mr. Li, what your lawyer just

15  described, is that accurate in terms of how you went over the

16  plea agreements?

17         THE DEFENDANT:  Correct.

18         THE COURT:  Now, do you understand that these two

19  plea agreements are really written contracts between you and

20  the United States government?

21         THE DEFENDANT:  I understand.

22         THE COURT:  All right.  And so when a person signs a

23  written contract after he's gone over the contract himself and

24  he's had the help of a lawyer and he understands the contract

25  and he signs it voluntarily, those contracts are then binding

7

1    on the person.  Do you understand that?

2            THE DEFENDANT:  Yes.

3            THE COURT:  All right.  And that means that even if I

4    don't go over every page or paragraph of these agreements with

5    you today in court, they're still -- everything that's written

6    in these documents will be binding on you.  Do you understand

7    that?

8            THE DEFENDANT:  Yes.

9            THE COURT:  All right.  Now, under paragraph 1 of the

10   plea agreement itself, you've agreed to plead guilty to Count 3

11   of the superseding indictment, and that charges you with being

12   a member of a conspiracy to commit money laundering.

13           Do you understand that that's what you're agreeing to

14   do?

15           THE DEFENDANT:  Yes.

16           THE COURT:  All right.  And that offense exposes you

17   to up to 20 years of imprisonment followed by up to three years

18   of supervised release.  Do you understand that?

19           THE DEFENDANT:  I understand.

20           THE COURT:  It also exposes you to having to pay a

21   fine of up to $500,000, or twice the value of the funds that

22   were involved in the offense, whichever number is higher.  Do

23   you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  And in addition, you'll have to pay a

8

1    $100 special fine.  Do you understand that?

2                THE DEFENDANT:  Yes.

3                THE COURT:  Now, in the criminal justice system of

4    the federal government, when a person is sentenced to a period

5    of imprisonment, he has to serve the entire period.  Do you

6    understand that?

7                THE DEFENDANT:  Yes.

8                THE COURT:  And when the prison part of the sentence

9    is finished, that's when the supervised release part of the

10   sentence will go into effect.  When a person is on supervised

11   release, he is under the control of a federal probation

12   officer, and there may be requirements to do certain things as

13   well as requirements not to do certain things.

14               I can't tell you those conditions yet because I

15   haven't seen the presentence report, but what you need to

16   understand at this time is if you break any of those

17   conditions, you can be brought back to court, and if the

18   violation is proven, then you can be sent back to prison for an

19   additional three years.

20               Do you understand that?

21               THE DEFENDANT:  I understand.

22               THE COURT:  Now, when it comes time for sentencing,

23   the Court is going to be looking at two sources of law:  the

24   Federal Sentencing Guidelines and Section 3553(a) of the

25   Federal Criminal Code.  Do you understand that?

9

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now, in order for the Court to determine

4   the guidelines, I have to make two decisions.  First I'll have

5   to determine what your criminal history is.  Criminal histories

6   are divided into six categories, with each category getting a

7   number.

8          A No. I criminal history would go to somebody who's

9   never been in trouble with American law or has a very minor

10  record; and then as various problems occur, the score will go

11  up, with a level VI going to the most serious offenders.

12         Do you understand that?  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  Then the Court has to

15  determine the offense level.  Every federal crime has a number

16  that's given to it by the Sentencing Commission, and then

17  depending upon the facts of the case, that number can go up or

18  down.

19         Now, in paragraph 4 of your plea agreement, this is

20  on page 3, you and the government have agreed that the offense

21  level for the conspiracy to commit money laundering would be a

22  level 8.  You've also agreed in the plea agreement that because

23  the loss amount was greater than $3.5 million, there would be

24  an increase of 18 points, and you've agreed as well that you

25  did either know or believe that the monies you were laundering

1    were related to the distribution of controlled substances, that

2    means illegal drugs, and that you engaged in the business of

3    money laundering.

4            Those all result in further increases to the offense

5    level.  Do you understand that?

6            THE DEFENDANT:  (In English) Yes.

7            THE COURT:  All right.  Do you understand that even

8    though you and your attorney and the government have agreed to

9    these guideline factors, your agreement does not restrict the

10   Court, and if I decide to use different numbers, that would not

11   violate your plea agreement, and it would not give you a basis

12   to withdraw your guilty plea?

13           Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  All right.  So ultimately, the Court will

16   decide what your criminal history number should be and what the

17   offense number should be, and then those two numbers are put on

18   a one-page chart called the Sentencing Guideline Table, and

19   that will establish an advisory guideline range which the Court

20   must consider in determining the appropriate punishment, but

21   the Court is not required to sentence within the range and can

22   sentence above the range or below the range.

23           Do you understand that?  Do you understand?

24           THE DEFENDANT:  Yes.

25           THE COURT:  The only limit is the Court cannot

11

1    sentence you above the legal maximum, which is in this case 20

2    years of imprisonment.  Do you understand that?

3              Do you understand that?

4              THE DEFENDANT:  (In English) Yes.

5              THE COURT:  All right.  Now, defendants normally have

6    the right to appeal any sentence that was imposed on them by

7    complaining to a higher-level court about the sentence.  Do you

8    understand that?

9              THE DEFENDANT:  (In English) Yes.

10             THE COURT:  But under the terms of your plea

11   agreement, you're giving up your right to appeal any sentence

12   within the statutory maximum for any reason other than

13   ineffective counsel.  Do you understand that?

14             THE DEFENDANT:  I understand.

15             THE COURT:  All right.  In exchange for your guilty

16   plea today to Count 3, the government in paragraph 6 of the

17   plea agreement has agreed it will not further prosecute you in

18   this district for any of the activities described in the

19   superseding indictment or in your statement of facts.

20             Do you understand, though, that you're not protected

21   from being prosecuted in any other jurisdiction, so California

22   or New York or any other place where you might have committed

23   criminal activity?  Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  The government has agreed in

1    paragraph 7 that it will move to dismiss the remaining counts

2    in the indictment at the time you are sentenced.  Do you

3    understand that?

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  All right.  Now, there is a forfeiture

7    agreement in this case, paragraphs 10 through 12 of your plea

8    agreement, and you have agreed to a forfeiture agreement of I

9    believe it's $3.8 million?

10           MR. PETERS:  That's correct, Your Honor.

11           THE COURT:  Is that part of your understanding of the

12   plea agreement?

13           THE DEFENDANT:  Yes.

14           THE COURT:  You're sure about that?  You understand

15   US$3.8 million is what you're giving up in this case?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  All right.  Now, I'm assuming

18   again everybody in court is connected to the case?  Yes?

19           MR. PETERS:  Yes, Your Honor.

20           THE COURT:  All right.  We're going to go on to a

21   sealed record at this point.

22           *        *        *        *        *

23           (PAGES 13 THROUGH 15 NOT TRANSCRIBED IN THIS VOLUME)

24

25

16

1                  *          *          *          *          *

2                THE COURT:  Have you had enough time to tell your

3     lawyers everything you know about this case?

4                THE DEFENDANT:  Yes.

5                THE COURT:  Have they discussed with you the nature

6     of this conspiracy charge and any ways in which you could

7     possibly defend yourself against the charge?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Counsel, did you get discovery from the

10    government?  And you can take your mask off.  I want to be able

11    to hear you clearly.  Yeah.

12                MR. BERK:  Yes, Your Honor, I did.

13                THE COURT:  All right.  And were you able -- what

14    kind of discovery did you get?

15                MR. BERK:  I received a hard drive with four

16    gigabytes of the grand jury testimony, reports, a variety of

17    evidence, Your Honor.

18                THE COURT:  Were you able to directly show or at

19    least summarize for your client the kind of evidence the

20    government has?

21                MR. BERK:  I summarized it to him, to my client.

22                THE COURT:  And did Mr. Li ask you questions about

23    that evidence?

24                MR. BERK:  He did, Your Honor.

25                THE COURT:  Mr. Li, do you agree with what your

1   lawyer just said, that is, that he explained to you the kind of

2   evidence the government has that they could use against you at

3   trial?

4               THE DEFENDANT:  Yes.

5               THE COURT:  All right.  Are you fully satisfied with

6   the way your lawyer negotiated this guilty plea, in other

7   words, the way in which he went about getting you the ability

8   to plead guilty to Count 3?

9               THE DEFENDANT:  Yes.

10              THE COURT:  And are you fully satisfied with the way

11  in which your attorneys have worked for you in this case?

12              THE DEFENDANT:  Yes.

13              THE COURT:  All right.  Now, do you understand you

14  still at this time have a right to plead not guilty to Count 3

15  of the indictment, and if you pled not guilty, then the burden

16  at trial would be on the prosecution to prove you guilty beyond

17  a reasonable doubt?  Do you understand that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  In order for them to meet that burden,

20  they have to essentially prove the following facts beyond a

21  reasonable doubt:  First they have to prove that the conspiracy

22  described in Count 3, in fact, existed.

23              THE DEFENDANT:  Yes.

24              THE COURT:  Now, a conspiracy is basically an

25  agreement between two or more people to do something which the

18

1    law forbids.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And specifically, here they'd have to

4    prove that sometime around 2008 and continuing up through the

5    date of the indictment, a group of people, including Xizhi Li,

6    Jianxiang Chen, Jiayu Chen, Eric Wong Yu, and Tao Liu, had an

7    agreement to launder money that was related to drug offenses,

8    criminal drug offenses.

9              They'd have to then prove that at some point during

10   that time frame, not -- it doesn't have to be from 2008, but at

11   some point during that time frame, you knowingly and

12   intentionally, and that means not by an accident, mistake, or

13   some other innocent reason, joined into the activities of that

14   agreement or conspiracy.  And so they have to be able to show

15   beyond a reasonable doubt that you either knew or had reason to

16   believe that the monies that you were laundering were related

17   to illegal drug transactions.

18             Do you understand that?  Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And they have to show some connection of

21   that conspiracy to this district, to this part of Virginia.

22             Now, if you went to trial, there are certain rights

23   and protections you would have at trial that you will

24   essentially give up by pleading guilty.  At trial, you could

25   see all the government's witnesses and evidence and test it

1    through the questions of your lawyers.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  You could ask the Court for help in

5    getting witnesses or physical evidence brought to the

6    courthouse by having the Court issue subpoenas.  Do you

7    understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  You could testify at trial as a witness.

10   Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  You could also choose not to testify, and

13   if you made that decision, your silence could not be used as

14   any evidence of guilt against you.  Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  You would have the right to the help of a

17   lawyer at all stages of any trial, and if you couldn't pay for

18   a lawyer, we would pay for one for you.  Do you understand

19   that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Now, there are two ways in which a case

22   can be tried.  The first way is to a judge alone, and the

23   second way is to a jury, in which case 12 ordinary citizens

24   would be brought together to decide the issue of guilt or

25   innocence.

1              Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  But no matter what type of trial, whether

4    to a judge alone or to a jury, you could not be found guilty

5    unless the government proved your guilt beyond a reasonable

6    doubt.  And in the case of a jury trial, for a jury to find a

7    person guilty, all 12 jurors have to agree, so if just one

8    juror had a reasonable doubt, that jury could not convict.  We

9    would have to set a new trial with a new jury.

10             Do you understand that?  Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  If you continued with a not guilty plea,

13   your lawyers could try to attack the prosecution's case.  Now,

14   that could be done, for example, by filing a motion to dismiss

15   the case because of the amount of time you've spent in prison,

16   which they could try to argue might violate our Speedy Trial

17   Act.  That's an example of a motion or an attack that could be

18   made on the case.  Another example of a possible attack would

19   be whether there's enough connection to this district, to

20   Virginia.

21             What I want to make sure you understand is that when

22   a person pleads guilty, he gives up any of those possible

23   attacks that could be made on the prosecution's case.  Do you

24   understand that?

25             THE DEFENDANT:  I understand.

1          THE COURT:  The only attack that you could still make

2     at any time is whether the Court lacked jurisdiction.  Other

3     than that, you're giving up any other types of defenses you

4     might have to this case.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And lastly, if you pled not guilty and

8     you went to trial and you were found guilty at trial, you could

9     appeal -- you could appeal that finding of guilt to a

10    higher-level court.  Do you understand when a person is found

11    guilty on a guilty plea, you no longer have a right to appeal

12    your conviction?

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Other than the plea agreement and the

16    addendum, do you believe that anybody has promised or suggested

17    to you that by pleading guilty rather than going to trial, you

18    would get a lighter sentence -- you would get a lighter

19    sentence or more favorable, more favorable treatment by the

20    Court?

21         THE DEFENDANT:  No.

22         THE COURT:  Has anyone put any force or pressure on

23    you to plead guilty today?

24         THE DEFENDANT:  Yeah.  He say that because all --

25    that I have done that, and yes, I know that the -- I, I did

22

1  plead guilty on that of free will, and I know that all these

2  people did all these bad acts. So I did it with my free will.

3        THE COURT: All right. In any respect, do you feel

4  that the amount of time you've already been in prison and the

5  fact that there's been the COVID-19 virus problem, did that put

6  any force or pressure on you to make your decision to plead

7  guilty today?

8        THE DEFENDANT: No. That's because I read the Bible

9  and I know that I did -- what I did was wrong.

10        THE COURT: All right. The last thing we need to go

11  over is the statement of facts. Now, this is an 11- -- I'm

12  sorry, 13-paragraph document. On the last page, again I see

13  what appears to be your signature, and the new date on this is

14  April 12, which would have been two days ago, Monday.

15        Did you, in fact, sign the statement of facts on

16  Monday?

17        THE DEFENDANT: (In English) Yes.

18        THE COURT: All right. Now, do you understand that

19  by signing the statement of facts, you are admitting that

20  everything that's written in those 13 paragraphs is true, and

21  you are agreeing that if the case went to trial, the government

22  could prove all of those facts beyond a reasonable doubt?

23        Do you understand that?

24        THE DEFENDANT: Yes.

25        THE COURT: All right. Now, it says in paragraph 1

1   that from 2014 through October of 2020, that you were part of

2   this agreement or conspiracy to launder monies, which

3   represented the proceeds from unlawful activity, specifically,

4   drug -- illegal drug transactions.  That's what you're pleading

5   guilty to.  Do you understand that?

6           Do you understand?

7           THE DEFENDANT:  Yes.

8           THE COURT:  All right.  Now, it says in paragraph 5

9   that starting in 2014, you began to work with a codefendant

10  named Xizhi Li.  Is that correct?

11          THE DEFENDANT:  (In English) Yes.

12          THE COURT:  How did you -- how do you know Mr. Li?

13          THE DEFENDANT:  He's from my hometown.

14          THE COURT:  Your hometown in China?

15          THE DEFENDANT:  Yes.

16          THE COURT:  So you've known -- have you known him

17  your whole life?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  And when did you start

20  working with him in this case?

21          THE DEFENDANT:  At the end of 2004, probably October.

22          THE COURT:  2014?

23          THE DEFENDANT:  2014.

24          THE COURT:  All right.  And what exactly were you

25  doing with him?

24

1    THE DEFENDANT:  Because my friend need money to buy
2  some seafood, so I asked him for some money.
3    THE COURT:  Well, you had a seafood import-export
4  business known as Shuoyu USA, Inc.; is that correct?
5    THE DEFENDANT:  Yes.
6    THE COURT:  All right.  And you were, as I understand
7  it, using monies through that business that were being part of
8  this drug conspiracy; is that correct?
9    THE DEFENDANT:  Yeah, yeah.  A little part of it,
10  yes.
11    THE COURT:  Well, it says at the end of paragraph 5
12  that during this agreement or this conspiracy, you used some of
13  that food business money to launder about $1 million of drug
14  proceeds.  Is that correct?
15    THE DEFENDANT:  Yes.
16    THE COURT:  Now, were you getting any money yourself
17  from doing this?
18    THE DEFENDANT:  No.
19    THE COURT:  So what was the benefit to you?  Why were
20  you doing this?
21    THE DEFENDANT:  Because it's for convenient.  I don't
22  have to go to China.
23    THE COURT:  All right.  Now, you know somebody named
24  Q. Chen?
25    THE DEFENDANT:  Yes.

1          THE COURT:  And it says in paragraph 6 that at some

2   point in 2016, you introduced Q. Chen to J. Chen.  Is that

3   correct?

4          THE INTERPRETER:  Excuse me, Your Honor, can you

5   repeat that?

6          THE COURT:  At some point in 2016, you introduced

7   Q. Chen to J. Chen; is that correct?

8          The first initial is "J," as in --

9          THE DEFENDANT:  Yes.

10          THE COURT:  How did you know Q. Chen?

11          THE DEFENDANT:  She's Mr. Li's wife.

12          THE COURT:  All right.  Is that correct?

13          MR. PETERS:  "Wife" is a loose term.  They're

14   paramours, Your Honor, not formally married, but yes, that's

15   correct.

16          THE COURT:  And who is J. Chen?

17          THE DEFENDANT:  He's working for Mr. Li.

18          THE COURT:  All right.  It says here you hoped to

19   benefit financially from that introduction.  Why did you have

20   those two people meet?

21          THE DEFENDANT:  Because I was too scared to do the

22   act, so I just have these two do the act instead.  I just

23   introduced them so that they could do it instead.

24          THE COURT:  And you were -- were you scared because

25   you knew that some of this money was connected to international

26

1    drug trafficking?

2         THE DEFENDANT:  Yes.

3         THE COURT:  I don't need to go over everything in

4    this document because again, the critical thing is you've

5    agreed that all these facts are correct.  Is that right?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Do you understand if the Court accepts

8    your guilty plea today, there'll be no further trial of the

9    issue, and you'll be found guilty of Count 3?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Do you claim in any respect that you're

12   innocent of the charge of being involved in a conspiracy to

13   commit money laundering in which the funds are related to

14   international drug trafficking?

15        THE DEFENDANT:  No.

16        THE COURT:  How then do you plead, guilty or not

17   guilty?

18        THE DEFENDANT:  I plead guilty.

19        THE COURT:  All right.  Counsel, have you had enough

20   time to go over this guilty plea with your client?

21        MR. BERK:  Yes, Your Honor.

22        THE COURT:  Does the plea accord with your

23   understanding of the facts and circumstances?

24        MR. BERK:  Yes, Your Honor.

25        THE COURT:  Are you satisfied that Mr. Li has entered

1   his plea in a knowing and voluntary fashion?

2           MR. BERK:  I am.

3           THE COURT:  All right.  Then I'm satisfied based on

4   these answers, and this is really the second time we've been

5   through this colloquy with the defendant, that he's entered his

6   guilty plea in a knowing and voluntary fashion; that he's had

7   the full advice of competent counsel; and that the written

8   statement of facts plus the oral admissions in court today are

9   more than sufficient to find the defendant guilty beyond a

10  reasonable doubt.

11          Now, there's a written -- so I'm accepting the guilty

12  plea and finding the defendant guilty of Count 3 of the

13  superseding indictment.

14          I also have before me a consent order of forfeiture;

15  and, Mr. Li, do you agree that you have signed the forfeiture

16  order for $3.8 million?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Yes?  All right.  Then I'll enter that

19  now.

20          All right.  So the plea having been accepted, we need

21  to set this case for a sentencing hearing, and I think we might

22  as well do it the same day.

23          MR. PETERS:  Yes, Your Honor.

24          THE COURT:  All right.  So we are looking at Tuesday,

25  July 13.  Does that work for counsel?  And that would be at

1   9:00 -- or actually, 9:30.

2           MR. BERK:  I think so, Your Honor.  That should be

3   fine.

4           THE COURT:  All right.

5           MR. BERK:  Your Honor, was that 9:30 or 9:00?

6           THE COURT:  I have another one at nine, so we'll get

7   these done then.

8           All right.  Mr. Li, you will be visited in your cell

9   by a federal probation officer who will be preparing the

10  presentence report.  Your full cooperation with the officer is

11  to your advantage.

12          Do you understand that?

13          THE INTERPRETER:  He says, "Yes, I understand, and

14  thank you."

15          THE COURT:  I'm sorry?

16          THE INTERPRETER:  He says, "Yes, I understand, and

17  thank you."

18          THE COURT:  And you're getting credit for the time

19  you've already been in prison against the final sentence you

20  receive.  Do you understand that?

21          THE DEFENDANT:  Thank you, Your Honor.

22          THE COURT:  All right, very good.

23          Anything further on this case?

24          MR. PETERS:  No, Your Honor.

25          THE COURT:  No?  All right, then we'll recess court

29

1    for the day.

2                        (Which were all the proceedings

3                         had at this time.)

4

5                    CERTIFICATE OF THE REPORTER

6         I certify that the foregoing is a correct transcript of

7    the record of proceedings in the above-entitled matter.

8

9

10                         _____
                                      /s/
11                            Anneliese J. Thomson

12

13

14

15

16

17

18

19

20

21

22

23

24

25